### MATTHEWS *v.* THE STATE.

1. The burglary being fully established, and the whole contest being as to the identity of the burglar, the positive testimony of one witness that she recognized the accused as the person, and the less confident testimony of another that she also recognized him, both of them being on the premises when the offence was committed, and the moon giving considerable light, warranted a verdict of guilty.
2. The newly discovered evidence is not such as to justify the grant of a new trial upon legal principles.

March 16, 1891. LUMPKIN, J., disqualified and not presiding.

Criminal law. Burglary. Evidence. New trial. Before Judge LUMPKIN. Madison superior court. March term, 1890.

Joe Matthews was indicted for burglary. The testimony for the State tended to show that the store of one Phillips was broken open on March 6th, 1887, about ten or eleven o'clock at night. So far as was known noth-

ing was stolen. Phillips heard a noise at the store, and went out and saw a black man about the size of defendant; could not say who it was. The man ran and Phillips after him about a quarter of a .mile. When the man came out of the store he shot at Phillips, and Phillips dodged around the corner of the house, and the man jumped out so quick Phillips could not get a clear view of him. Just as he shot at Phillips, Phillips shot at him. It was a moonlight night, tolerably light. Elbert Fleming, a negro man, lived in Phillips' yard at that time, and Phillips, after running the burglar in two or three hundred yards of defendant's house, came back, put on his clothes, took his dog and tracked the burglar, and Fleming came up and Phillips charged him with being the one who had been in the store. Phillips measured the track of the burglar and it was too small for the track of Fleming. The next morning Phillips was still tracking, and defendant came down there and Phillips measured his track, which just exactly fit the track of the man who broke into the store. Mrs. Phillips saw the burglar as he ran, and was positive that it was defendant. The wife of Fleming testified that she did not ' see defendant come out of the store; that she was where she could see him come out of the store, and he passed right along by her right before Mrs. Phillips; that she (witness) did not know it was defendant "come out of the store"; that he was not to say running fast, but just trotting along, and she did not know he was the one who came out of that store; that she knew defendant well and he was the only one she saw running; that she thought the one that came out of the store was just gone on and that defendant was trying to help catch him, for Mr. Phillips was right close behind him.

The evidence for the defendant tended to show that on the night in question he was sick at home, about a .

mile and a half from the store, afflicted with boils and able to get about with difficulty, and that he did not leave home that night. His statement was to the same effect; he denied having committed the burglary, and said he would not injure Phillips that much, because he could get anything from him he wanted that was reasonable, and he would not injure Phillips that way for anything. He was found guilty, and moved for a new trial on the grounds that the verdict was contrary to law and evidence, and because of newly discovered testimony tending to show the following: On the night the store was broken open, Bob Hayes, *alias* Young Robinson, was living at the house of Prince Pendleton, about a quarter of a mile from and in sight of the store. Prince went to sleep very early. Some time in the night Bob Hayes came into the room where Prince was sleeping, and waked Prince by asking him if he heard that fuss up at the store, and Prince said, "No." Bob said they had a terrible fuss up there and had been shooting; and Bob then fell upon another bed in the room. He had on clothes and remained there and did not come out at all, although Phillips sent a hand by there to one Patten's for help, and Prince got up and came out to see what was going on. Bob Hayes in form, size and bearing is very much like defendant, and either might be easily taken for the other. Soon after that time Bob left that section and has never returned. An iron piece, which Phillips stated he thought had been used in breaking the store, was one which had been taken off the wheelbarrow of Patten, and Bob Hayes at that time was living on Patten's land with Prince Pendleton. Bob and defendant wear about the same size shoe. In November, 1887, Bob was sentenced for burglary in Clarke county, under the name of Young Robinson, he having gone by the name of Bob Hayes while he lived at Prince Pendleton's. Bob bore a bad reputation for house-

breaking. Before the burglary in question, Young lived in Oconee county near a man whose smoke-house was broken open, from which a good deal of meat was said to have been stolen, and a warrant was taken out charging Young with that burglary, and thereupon he left that section. The affiant to the last mentioned facts did not know where Young had gone until affiant came to live in Madison county and found him living at Pendleton's under the name of Bob Hayes. Defendant and his counsel made affidavit as to diligence in looking up testimony and preparing the case for trial, and that the facts above stated did not come to their knowledge until after the trial.

The motion was overruled, and defendant excepted.

D. W. MEADOW, by brief, for plaintiff in error.

W. M. HOWARD, solicitor-general, by J. H. LUMPKIN, contra.

BLECKLEY, Chief Justice.

1. All the facts requisite to constitute the offence of burglary were established beyond the possibility of question, and the whole contest was as to the identity of the burglar. We cannot escape a feeling of apprehension that some mistake may have been made as to whether Matthews was really the person who committed the crime; but there was moonlight, and Mrs. Phillips testified positively to his identity. Her evidence was strengthened somewhat by that of a negro woman who was present and who, as well as Mrs. Phillips, recognized Matthews at the time. A strange fact is that this woman seems not to have told Phillips who the person was until next day ; and a still stranger fact is that, so far as appears, Mrs. Phillips did not tell him at all. Neither she nor Phillips mentions, in the testimony as it comes to us, anything of her having told him ; and after having full opportunity at night to converse

v 86-50

with his wife, he resumed the search for tracks next morning, as he says, "to see if I could make any discovery as to who it was." If his wife knew who it was, it is strange that he remained ignorant so long. But the jury heard the witnesses; and deciding according to legal rules, we cannot say that the evidence before them was not sufficient to warrant the verdict. There seems to have been no thorough sifting of the State's witnesses, but the jury were satisfied with the evidence without it; and we cannot order a new trial merely because the witnesses were not sifted on cross-examination. This was the fault of the prisoner or his counsel. Mrs. Phillips may or may not have been mistaken; the jury have found that she was not; the trial judge was satisfied with the finding, and the evidence being sufficient, this court will acquiesce.

2. The newly discovered evidence is not such as to justify the grant of a new trial upon legal principles.

*Judgment affirmed.*